EISNER GORIN LLP
ALAN EISNER, State Bar # 127119
14401 Sylvan Street, Suite 112
Van Nuys, CA  91401
Phone/ Fax: (818) 781-1570/5033
Email: alan@egattorneys.com

Attorney for Defendant,
HAKOB KOJOYAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 18-CR-00533-002-RS |
| ) | |
| Plaintiff, ) | DEFENDANT HAKOB KOJOYAN'S SENTENCING POSITION |
| ) | |
| vs. ) | Date: March 24, 2021 |
| ) | Time: 11:00 a.m. |
| HAKOB KOJOYAN, ) | |
| ) | Before the Honorable Richard Seeborg |
| Defendant. ) | |
| ) | |
| ) | |
| _____ ) | |

TO THE HONORABLE RICHARD SEEBORG, UNITED STATES DISTRICT JUDGE, AND TO ASSISTANT UNITED STATES ATTORNEY ANDREW DAWSON:

Defendant Hakob Kojoyan, by and through his counsel of record Alan Eisner, hereby submits his Sentencing Position.

Defendant's position is based on the Pre-sentence Report ("PSR"), this sentencing position and exhibits, and upon any oral argument that may be presented at the hearing pursuant to Federal Rule of Criminal Procedure, Rule 32(c)(1).

Respectfully submitted,

EISNER GORIN LLP

Dated: March 17, 2021            */S/ ALAN EISNER*

ALAN EISNER
Attorney for Defendant
HAKOB KOJOYAN

1

# I.  INTRODUCTION

"My arrest and case proceedings have been especially important lessons for me, and I take full responsibility, without any conditions, for the crime I have committed. The truth is that the day of my arrest is the day I was set free – from all the guilt, paranoia, and anxiety.  It felt as if a ton of weight was lifted off my shoulder, because I knew that it was all over. I did not have to continue to live the life I had so much regretted for creating, and I did not know how to end it because my greed and ego had taken over my true essence and morals."

(Exhibit A – Defendant's Letter to the Court at 1.)

The words of Defendant Hakob Kojoyan, quoted above from his letter to the Court, exemplify his total and unreserved acceptance of responsibility for his unlawful conduct.  Defendant comes before the Court for sentencing on Count 1, unlicensed wholesale distribution of prescription drugs in violation of 21 U.S.C. §§ 331(t), 333(b)(1)(D), and 353(e)(1).  Defendant is a 29 year-old young man for whom this case represents his first criminal conviction.

As set forth in the factual basis agreed to by the parties, Defendant was a participant in a scheme by which prescription drugs, primarily those used to treat HIV, obtained from unlicensed suppliers were sold to customers unaware of the unlicensed, and therefore unlawful, nature of the drugs.  (Dkt. 104 at 2-3.)  By utilizing unlicensed suppliers, Defendant his co-conspirators were able to profit from the sale of prescription drugs to an extent which would not have been possible had they born the costs of regulatory compliance necessitated by federal law.  It must be emphasized, however, that "[t]here [is] no indication any patients suffered any ill effects or were harmed by [Defendant]'s conduct."  (PSR ¶ 39.)  Defendant expects the Government to further agree that there is no evidence that Defendant personally participated in tampering with, altering, or otherwise engaging in direct conduct involving the drugs themselves which endangered patients.

For the reasons set forth below, a sentence of 18 months in federal prison is adequate, but not greater than necessary, to punish Defendant for his participation in the scheme to evade federal drug regulations.

## II.  THE ADVISORY GUIDELINES RANGE

The parties have agreed, and the probation department concurs, that Defendant's advisory guidelines range is 30 to 37 months based on a total offense level 19 and a criminal history category I.  Defendant notes that this calculation takes into account his complete lack of prior criminal history and his timely and unreserved acceptance of responsibility.  (PSR ¶¶ 52, 55, 90.)

Based on Defendant's relevant history and characteristics, however, Defendant urges the Court to vary below the advisory guidelines range and impose a sentence of 18 months.

## III.  AN APPLICATION OF TITLE 18 U.S.C. § 3553(a) FACTORS SUPPORTS A DOWNWARD VARIANCE

The overriding mandate of § 3553(a) requires district courts to impose a sentence which is "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2), which are: (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment."); (b) deterrence; (c) incapacitation ("to protect the public from further crimes"); and (d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment").  In fulfilling this mandate, courts should not give the Guidelines more weight than any other relevant factor.  *United States v. Carty*, 520 F.3d 987, 991 (9th Cir. 2008) (en banc).  Additionally, the court "may not presume that the Guidelines range is reasonable."  *Peugh v. United States*, 133 S.Ct. 2072, 2080 (2013) (citation omitted).

These admonitions recognize "the principle that the punishment should fit the offender and not merely the crime."  *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011).  Accordingly, as "information . . . concerning the defendant's life and

characteristics" is "[h]ighly relevant – if not essential – to [the] selection of an appropriate sentence," *Pepper*, *supra*, the court must consider the history and characteristics of the defendant.  18 U.S.C. §§ 3553(a)(1).  Section 3553 also embodies the community's interest in avoiding unwarranted sentencing disparities among offenders convicted of substantially similar conduct.  18 U.S.C. § 3553(a)(6).

### A.     Defendant's history and character justify a downward variance

Defendant was born on December 14, 1991 in Vanadzor, Armenia.  (PSR ¶ 61.) Defendant is the only child resulting from his parents' non-marital relationship.  (PSR ¶ 62.)  His father left his mother while she was pregnant with Defendant.  (Ibid.) Defendant was raised by his mother in Armenia with no present father figure.  (Ibid.) The family struggled financially, though his mother did her best to meet his material needs as a child.  (Ibid.)

Due to the family's financial situation, Defendant had to begin working at age 14 to help support himself and his mother.  (PSR ¶ 63.)  He worked part-time during the school year and full-time while school was out of session.  (Ibid.)  When his father would occasionally call, it was only to speak to Defendant's mother.  (PSR ¶ 64.)  Defendant enjoyed no contact with his father during his childhood.  (Ibid.)  When Defendant turned 18, his father expressed interest in reunification and invited Defendant to come to the United States.  (PSR ¶ 65.)  When he finally immigrated legally at age 22, however, Defendant's father did not meet him at the airport.  (Ibid.)  Though they now live in the same country, Defendant only speaks with his father about once a year around Christmas time.  (Ibid.)  Defendant's father "politely refused," to allow him to meet his new family. (Ibid.)

In 2015, Defendant met his now-wife Anna with whom he shares a son, David, age four.  (PSR ¶ 67.)  Defendant also has a 12 year-old stepdaughter, Gemma, from his wife's prior marriage.  (Ibid.)  The couple hope to have more children in the future as Anna tragically suffered a miscarriage in May 2020.  (PSR ¶ 71.)  Defendant is actively involved in his community, serving his neighbors by offering handyman work and

transportation.  (PSR ¶ 69.)  Letters of support from Defendant's family members and other members of the community are collectively attached as Exhibit B.  While Defendant's supporters' high opinion of him is evident from their own words, several consistent themes deserve notice.

Defendant's wife Anna describes him as a dedicated father, husband, and family man.  She reports that Defendant lives in fear of incarceration not for his own sake, but because it will necessitate his separation from her and the children.  This sentiment is echoed by Defendant's step-daughter Gemma, who knew Defendant's relationship with her mother was a good thing as he treated Gemma as if she was his own daughter immediately upon moving in.  She states that Defendant would "put aside everything" to help her.  She cannot imagine life with Defendant being far away from her.

Defendant's in-laws share this view of Defendant despite their awareness of his conduct in this case.  Anna's mother, Alla Nisis, describes Defendant as "an individual who shows up earlier than asked, work[s] hard, and carries themselves in a polite, respectable manner."  She is "deeply moved," by Defendant's dedication to his family.  Monica Nisis, Anna's sister-in-law, described Defendant as a responsible and loving father.  She states her belief that fatherhood has matured Defendant substantially, and believes that his concern for his children will lead Defendant to make better choices in the future.

Defendant's community support extends to his long-time friends.  Ararat Karagezyan describes Defendant as his "best friend."  He states that "[k]indness and helpfulness are part of [Defendant's] identity."  He recounts an incident in 2015 in which Defendant flew to Armenia at his own expense to give blood to Mr. Karagezyan's father who was in need of a transfusion.  This extraordinary display of compassion is consistent with Defendant's reputation as reported by his numerous supporters.

In short, Defendant is a dedicated, compassionate, and family-focused man whose criminal conduct in this case is aberrational rather than indicative of his character.  The Court can properly consider the substantial negative impact that an extended period of

incarceration will have on Defendant's dependents, family, and the larger community in fashioning an appropriate sentence.

### B.    Defendant will suffer substantial collateral consequences of conviction

An extended period of incarceration is not necessary in this case to ensure that Defendant suffers substantial consequences.  Pursuant to his plea agreement, Defendant has forfeited his home in Palm Springs, California.  (Dkt. 104 at 6.)  Perhaps more significantly, Defendant faces the very real threat of deportation from and permanent ineligibility for re-entry into the United States following his eventual release from custody.  His plea agreement includes his affirmation that he wishes to plead guilty to this Court "even if the consequence is [his] automatic removal from the United States."  (Dkt. 104 at 2.)  Defendant also acknowledged that "there are no identical or substantially similar charges to non-removable offenses to which the government would agree." (Ibid.)

## IV.  CONCLUSION

An 18-month sentence for this non-violent, first offender is adequate, but not greater than necessary, to accomplish the goals of sentencing.  While Defendant's conduct in profiting by evading federal prescription drug regulations was unlawful, and plainly unacceptable, it resulted in no identifiable harm to any victim.  His inappropriate financial gain will largely be addressed through the forfeiture of his home.  While a custodial sentence is appropriate under the circumstances, Defendant respectfully asks the Court to impose a proportionate sentence which minimizes the negative impact on Defendant's young children and recognizes his otherwise positive and lawful efforts in life.

Respectfully submitted,

EISNER GORIN LLP

Dated: March 17, 2021            */S/ ALAN EISNER*_____

ALAN EISNER
Attorney for Defendant
HAKOB KOJOYAN

# LIST OF EXHIBITS

A.    Defendant's Letter to the Court

B.    Letters of Support
        1.    Anna Kojoyan
        2.    Gemma Melkonian
        3.    Alla Nisis
        4.    Ararat Karagezyan
        5.    Gegetsik Torosyan
        6.    Monica Nisis
        7.    Armine Torosyan
        8.    Anna Panyan
        9.    Sona Harutunyan
        10.    Gayane Hosepyan